### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**OLA KIRK**                                          **PLAINTIFF**

**V.**                                        CAUSE NO. _3:14cv537 WHB- RHW_

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;**
**ALBERT SANTA CRUZ, CHAIRMAN OF THE**
**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;**
**AND DONNELL BERRY, CHIEF OF THE MISSISSIPI**
**DEPARTMENT OF PUBLIC SAFETY**                    **DEFENDANTS**

## COMPLAINT

### JURY TRIAL REQUESTED

**COMES NOW** the Plaintiff herein, **OLA KIRK**, (hereinafter referred to as "Plaintiff Kirk"), by and through counsel, and files this "Complaint" against the **MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY,** an Agency of the State of Mississippi (hereinafter referred to as "Defendant MDPS"), **ALBERT SANTA CRUZ, COMMISSIONER** of the Defendant MDPS (hereinafter referred to as "Defendant Santa Cruz"); and **DONNELL BERRY, CHIEF AND ASSISTANT COMMISSIONER** of the Defendant MDPS (hereinafter referred to as "Defendant Berry") and in support thereof, Plaintiff Kirk would show unto the Court the following, to-wit:

### INTRODUCTION

1.      Plaintiff Kirk charges Defendant MDPS with unlawful employment practices on the basis of her sex (*female*) in violation of *42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964, as amended* (hereinafter "Title VII"); and *29 U.S.C. § 621 et seq* on the basis

1

of her *age* in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

2.      Plaintiff Kirk further charges the Defendant MDPS with violation of the Fourteenth Amendment in the denial of equal protection of the laws that prohibits gender discrimination; disparate treatment; violates the Equal Protection Clause; and that requires that persons who are similarly situated be treated alike. The U.S. Constitution's Equal Protection clause (14th Amendment) states that no state shall deny equal protection to its citizens. *U.S. Const. XIV, Section 1; and City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)*.

3.      Plaintiff Kirk charges under 42 U.S.C. §1983, that the Defendants named herein, Santa Cruz and Berry engaged in the violation of a right secured by the Constitution and laws of the United States, and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)*.

4.      Plaintiff Kirk alleges her 42 U.S.C. §1983 claims against the Defendants named herein, Santa Cruz and Berry for the violation of her statutory right to equal protection under the Fourteenth Amendment to the United States Constitution; and as a result Plaintiff Kirk was intentionally discriminated against on the basis of her membership in a protected class – *female*- or that similarly situated individuals were intentionally treated differently without a rational basis to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-602 (2008)*.

## JURISDICTION

5.      Plaintiff Kirk's claims arise under *42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964, as amended*, for engaging in sexual or gender discrimination towards females, including Plaintiff Kirk; and for age bias and discrimination in violation *29 U.S.C. §*

2

*621 et seq of the ADEA; 29 U.S.C. § 623*; and the *Fourteenth Amendment, Section 1 of the U.S. Const.*; and under 42 U.S.C. §1983. The jurisdiction of this Court over Plaintiffs' claims is based on *42 U.S.C. § 2000e-5; 28 U.S.C. § 1331; and 28 U.S.C. § 1343*. Plaintiffs' claims for declaratory relief arise under *28 U.S.C. § 2201 and § 2202*.

## PARTIES

6.       Plaintiff *Ola Kirk* is an adult resident citizen of the State of Mississippi residing at 12 Christian Road, Cleveland MS 38732.

7.       Defendant *Mississippi Department of Public Safety* ("MDPS") is an agency of the State of Mississippi and may be served with process of this Court by serving the agent for service of process as follows:  *Honorable Jim Hood*, Attorney General, Mississippi Attorney General's Office, Walter Siller Building, 550 High Street, Suite 1200, Jackson Mississippi.

8.       Defendant *Albert Santa Cruz*, is the Chairman and Commissioner of the Defendant Mississippi Department of Public Safety; and he is a person under 42 U.S.C. §1983 and he may be served with process at his business address of the Mississippi Department of Public Safety Headquarters, 1900 East Woodrow Wilson Drive, Jackson, Mississippi 39205.

9.       Defendant *Donnell Berry*, is the Chief of the Defendant Mississippi Department of Public Safety; and Berry is the Director of the MHSP and Assistant Commissioner of the Defendant MDPS; and he is a person under 42 U.S.C. §1983 and he may be may be served with process at his business address of the Mississippi Department of Public Safety Headquarters, 1900 East Woodrow Wilson Drive, Jackson, Mississippi 39205.

10.       At all material times and during the acts alleged herein, Defendants MDPS, *Santa Cruz* and *Berry* were state actors engaged in acts and conduct that deprived Plaintiff Kirk of rights secured by the U.S. Constitution and federal law; and that their acts and conduct and were

by a person acting under the color of state law within the scope of *42 U.S.C. §1983*.   *Flagg Bros., Inc. v. Brooks, 436 U.S. 249 (1978).*

## FACTS

11.     Plaintiff Kirk began her employment with MDPS in December 1987. Plaintiff Kirk is a sworn law certified law enforcement officer of the State of Mississippi and serves as a *Master Sergeant* with Defendant MDPS.  Plaintiff Kirk currently serves in the Northern Region of the MDPS, as a District 2 Supervisor; and she has served in that position since 2002.

12.     Plaintiff Kirk is an African American female, born on **November 7, 1955**. Plaintiff Kirk is making claim against her employer, Mississippi Department of Public Safety (hereinafter referred to as the "**MDPS**"), under Title VII of the Civil Rights Act of 1964 as amended ("**Title VII**"), for discrimination because of my sex and gender (*female*) and discrimination because of her age [*fifty-seven (57) at all material times*] in violation of the Age Discrimination in Employment Act of 1967, as amended ("**ADEA**").   Plaintiff Kirk was and is a member of the protected age group under the **ADEA.**

13.     Plaintiff Kirk is currently a *Master Sergeant* with the MDPS and she has been in that position for the last eleven (11) years. Plaintiff Kirk's immediate supervisor is Lt. John Hillhouse.

14.     Plaintiff Kirk, in the performance of her duties for the MDPS in 2013, had increased the *permanent* locations Driver Services and *temporary* Driver Services locations in her Region and District for the MDPS.  Plaintiff Kirk was and is an exemplary employee of Defendant MDPS.  Plaintiff Kirk is an Army veteran; and she had been recognized by the MDPS (sometimes referred to as "**the Agency**") for her dedication, expertise in the area of driver services, her work performance, and her commitment to the Agency.

4

15.     Plaintiff Kirk engaged in the Defendant MDPS's "promotion and selection" process after her promotion to M/S (her current position with the Agency) in 2002. Her efforts were unsuccessful. Plaintiff Kirk was told that under the policies and procedures of the Defendant MDPS that each candidate for a position would be evaluated with the objective being to identify those candidates who were the best qualified to fill the vacancy; and that the selection of candidates to fill positions within the Agency would be lawful.

16.     Plaintiff Kirk would show under a new testing procedure of the Agency, Plaintiff Kirk was tested in March 2013 for the positions of Captain of Enforcement; Lieutenant of Enforcement; and Lieutenant with MBI. Plaintiff Kirk passed the written testing for both enforcement positions, but not MBI. Plaintiff Kirk was orally interviewed for the enforcement positions, but not selected. Plaintiff Kirk was the ***only female*** interviewed for either position for which she was qualified in accordance with the testing of candidates for promotion. Male candidates were selected by the Agency to fill those positions for which Plaintiff Kirk sought promotion in March 2013.

17.     Plaintiff Kirk would show that the average salary for LT positions within the Agency: *$46,053.80 to $80,594.15*. Plaintiff Kirk has not had a promotional raise since being promoted by the Agency to M/S in 2002. A promotion to LT or Captain would he a raise in salary and benefits; along with improving her retirement under the Public Employee's Retirement System of Mississippi ("PERS").

18.     Plaintiff Kirk would show that despite her diligent efforts for advancement, she has not been promoted by the Agency since 2002. Plaintiff Kirk was unsuccessful on each attempt, even though a qualified candidate. Plaintiff Kirk would show that her lack of promotion within the Agency and by the Defendant MDPS, et al caused her to suffer an adverse

employment action ("her failure to be promoted") and that that actions of the Agency give rise to an inference of gender discrimination. Simply put, there are very few females in the positions of M/S and above within the Agency.

19.     Plaintiff Kirk would show that at the time of her interview in March 2013 there were only seven (7) females in M/S and higher positions with the MDPS, with *Lt. Colonel – Gayle Mills being the highest* in the Agency. *Gayle Mills*, *Kathy Finch*, *Gayle McMullen*, *Laura Smith*, *Cecille Kazyer*, *Tammie Hall* and *Ola Kirk* are the only other females in M/S positions or above with the Agency.

20.     Plaintiff Kirk would show that Defendants Santa Cruz and Berry, at all material times from at least February 2011, were the appointing authority with the Defendant MDPS; and that Defendants Santa Cruz and Berry were the final decision-makers for the promotions in Driver Services and the Agency; that Defendant Berry selected members of the interview committee for promotions within the Agency; that Defendants Santa Cruz and Berry knew that the promotional process was unlawful and that female employees received different treatment than male employees of the Agency in the promotional process.

21.     Plaintiff Kirk would show that Defendant Berry was personally involved in the deprivation of the civil rights of Plaintiff Kirk based upon her membership in a protected class-*female* – in violation of the Equal Protection Clause; and the state law that prevents unlawful discrimination by agencies of the State of Mississippi; that Defendant Berry knew that Plaintiff Kirk was being subjected to gender bias; and Plaintiff Kirk would show that she was *intentionally* treated differently from others similarly situated by the Defendants MDPS, Santa Cruz and Berry and that there was and is no rational basis for the difference in treatment.

22.     Plaintiff Kirk in June 2013 was in charge of Driver Training for the MDPS in her Region and she instructed driver services personnel including Master Sergeants with the MDPS and she supervised and trained MDPS personnel at the *Troop D - Driver License Examining Locations* in Belzoni, Greenwood, Kosciusko, Cleveland, Grenada, Lexington, Greenville, Indianola, and Winona.

23.     On **April 15, 2013**, Lt. Anthony Wright, announced his retirement effective at the end of May 2013. As a result, it was necessary for the MDPS to fill that position after the retirement of LT. Wright. After the retirement, the MDPS placed personnel in the "Acting LT slot" to perform those duties until the LT slot was permanently replaced. Plaintiff Kirk was one of those that served in the acting LT position after the retirement of LT Wright; and she was the *only female* to serve in that capacity following the retirement of Lt. Wright.

24.     On **June 7, 2013** the position held by Lt. Wright with the MDPS of **DPS-REGION SUPV DRIVER SERV (LT)** was posted by Defendant Donnell Berry, Director of MHSP and Assistant Commissioner of the MDPS. A copy of the Notice for the vacant position for which Plaintiff Kirk applied is attached hereto marked **Exhibit "A"** and incorporated herein by reference.

25.     Plaintiff Kirk responded to the *Position Open Notice* as this would have been a pay increase, additional duties, and an advancement position for her. Plaintiff Kirk would show that as an *Army veteran* and that would entitle her to additional points for the promotional process with the Agency. Plaintiff Kirk, believing that she had the qualifications, skill, work experience, and had trained personnel in Driver Services for the Agency, made application for the vacant LT position previously held by LT Wright. Plaintiff Kirk again hoped for a promotion within the Agency.

26.     Plaintiff Kirk would show that she is the ***only female*** Army veteran in the MDPS; and she noted her veteran's status on her application with the Agency as she has done on all occasions that she has sought promotion. The Veteran Affairs Form DD214 of Plaintiff Kirk was submitted with her application for the vacant LT position that is the subject of this action.

27.     Plaintiff Kirk would show that at the time of making application for the LT position, Plaintiff Kirk supervised more permanent and part time locations in the Driver Services Division of the MDPS than any other candidate; and Plaintiff Kirk ***trained*** personnel in Driver Services.

28.     Plaintiff Kirk would show that Defendant MDPS after receiving the names of the applicants proceeded with the scheduling of the interview of each of the candidates for the LT position. Defendant Berry selected the interview committee members to interview the candidates seeking the LT position.

29.     There were six (6) candidates that were interviewed on the same day, **July 17, 2013**, for the Driver Services Central Region LT position.  Those candidates were Charles Coleman; Anthony Cunningham, Richard Davenport, James Gunter, Ola Kirk and James Walker.  Plaintiff Kirk was the ***only female*** interviewed for the vacant position; and she was the ***oldest candidate*** interviewed for the position.

30.     Plaintiff Kirk would show that at the time of the vacancy of the LT position that she had more experience, training and her credentials (***all of the required objective criteria such as years of experience, work performance and qualifications***) than any other candidates that applied for that position.  Plaintiff Kirk would show that even though her long term employment with the Defendant MDPS carries with it "***no guarantee of any promotion***" ....to a ***successful employee*** it is expected that a promotion would be in order. *Ellerbrook v. City of Lubbock, 2012*

*U.S. App. LEXIS 5366 (5th Cir. Tex. March 14, 2012; Mississippi Employment Sec. Comm'n v. Collins, 629 So. 2d 576 (Miss. 1993); and Section 25-9-149 of the Mississippi Code of 1972, Annotated.*

31. Plaintiff Kirk would show that she remained "in grade" for eleven (11) years while at the same time actively seeking advancement with the MDPS. There was no Agency advancement. At the time of the LT opening, Plaintiff Kirk had supervised as many as fifteen (15) employees, and one sworn officer, since her promotion to Master Sergeant in 2002.

32. Plaintiff Kirk would show that she supervises the day to day operations of the Driver Services Division in District II; and she ***actively trained Master Sergeants*** in the Agency including Johnny Delaney, John Harris and John Warren. Plaintiff Kirk trained M/S John Harris and at the time of the training of Harris, he reported to M/S ***Anthony Cunningham***.

33. Plaintiff Kirk would show that she is the only female Army veteran in the MDPS; and she noted her veteran's status on her application for the LT vacancy and all other occasions for which she has sought promotion and advancement with the Defendant MDPS from 2002 to the present.

34. Plaintiff Kirk at the time of the promotion to the LT slot, that she had five (5) permanent locations to service – ***Cleveland, Grenville, Greenwood, Grenada and Kosciusko***; and she had four (4) satellite locations: ***Winona, Lexington, Indianola and Belzoni***. The MDPS, Driver Services, has expanded in Grenada, and Kosciusko, and Plaintiff Kirk has continually been given more duties and responsibilities by the Agency.

35. Plaintiff Kirk would show that after making known my desire for the promotion, she was interviewed along with other candidates on **July 17, 2013**. Plaintiff Kirk would show

that the interviews were conducted in alphabetical order starting with the first candidate to be interviewed by the committee, M/S Charles Coleman.

36.     The interview team, appointed by Defendant Berry and the MDPS, consisted of *Major Chris Gillard* (Chairman of the committee), *Captain Prentiss Parker* and *Lt. James Kelly*. All the members of the interview team were male. Captain Prentiss Parker was a friend and former co-worker of one of the candidates interviewed, *Anthony Cunningham*.

37.     Plaintiff Kirk would show that Captain Parker was the supervisor of candidate Cunningham; and Captain Parker was also to be the *supervisor* of the appointed candidate selected for the LT position for which Plaintiff Kirk had made application and for which she was seeking a promotion. Captain Parker also supervised committee member, Lt. James Kelly. Defendant Berry had knowledge of the committee members, their gender and their relationship described herein as he appointed the committee members to select the candidate to replace LT Wright.

38.     Plaintiff Kirk would show that the Defendant MDPS had no policies and procedures that (1) governed the interview and selection of a candidate for the vacant LT position, (2) governed the selection process, or (3) governed the committee member's recommendation of the successful candidate to fill the position. The method of scoring the candidates was arbitrary and capricious; and based upon *subjective* criteria by the Agency and approved by Defendant Berry.

39.     Plaintiff Kirk would show that objective criteria should have been used in the promotional process such as scored testing, education requirements, work experience, and work performance of the candidates. However, the selection committee did not consider those criteria in the promotional process for the LT position that Plaintiff Kirk was seeking a promotion.

40.     Plaintiff Kirk would show that factors other than the "scoring on the interview" were not considered by the selection committee in the selection and recommendation process; and that Defendant Berry had knowledge that the promotional process of the Agency was in violation of the Equal Protection Clause; and that Plaintiff Kirk, because of her gender, received different treatment that received by other similarly situated individuals.   There was no one from Kirk's Region or in her chain of command or her gender (female) on the selection committee as appointed by Defendant Berry.

41.     Plaintiff Kirk would show that the committee members after each interview ***compared their scores*** with other members; the scoring of the candidates was reviewed and changed, if necessary, by members of the interview committee after a discussion following the interview of each candidate; and scores were tallied; and the highest score on the interview was chosen as the successful candidate by the committee.

42.     Plaintiff Kirk would show that the interview of the candidates and responses of the candidates during the interview/ testing were not recorded; the notes of the interview panel as to each person interviewed by the selection committee members appointed by Defendant Berry were ***destroyed*** by the committee chair, Major Chris Gillard, ***after*** the completion of the interviews for the LT position.

43.     Plaintiff Kirk would show that the selection committee members of the Defendant MDPS had no scoring system for ***complete*** and ***partially correct*** answers by the candidates; there was no criteria for the questions of the candidates or the scoring of each answer; there were only ***six (6) questions*** asked each candidate and the questions asked of each candidate were the same.

44.     Plaintiff Kirk would show that in the event that any unsuccessful candidate ***challenged*** the scoring (or a candidates response to any of the questions) during the

interview/testing, there was no means to do so. The candidate selected by the committee and recommended to Defendant Berry and the MDPS was based *solely* based upon the scoring on the interview. The education, work experience, work record, training of personnel, length of service, accommodations, job performance with the Agency, and veteran's points, were *not factored in the final score* and the *recommendation* of the selection committee to the appointing authority, Defendant / Colonel Donnell Berry.

45.     Plaintiff Kirk would show that during the interview, she properly answered all *six (6) questions* asked by the members of the Agency's selection committee. The questions asked for an M/S that was an experienced Examiner and Trainer of Driver Services personnel with the Agency were not that difficult. During the interview Plaintiff Kirk was told by Captain Parker that she was the *only candidate* that answered correctly one of the questions. At this time, Cunningham had already been interviewed by the committee. All candidates were waiting outside the interview room on the day of the interview and Plaintiff Kirk was the next to last candidate to be interviewed by the selection committee.

46.     Plaintiff Kirk would show that during the interview, she was told that the promotion to the LT position may require relocation. Plaintiff Kirk was the only candidate that was told that the promotion would require her to relocate. Plaintiff Kirk told the selection committee that she could relocate if necessary.

47.     Plaintiff Kirk would show that she did not fail to answer any of the questions asked by the interview committee; that she did not deserve a *low score* on two (2) of the questions **(#2 and #4)** asked by the interview committee. The scoring on those two (2) questions on the "test" graded by the selection committee was the determining factor in the selection of candidate Cunningham over Plaintiff Kirk.

48.     Plaintiff Kirk would show that committee member Captain Parker provided **higher scores** for Cunningham over Kirk; and there was a greater scoring disparity between Parker's scoring of Kirk and Cunningham than any other member of the committee (*6 points*) in the interview process. Captain Parker, Major Gillard, and Lt. Kelly did not recommend Plaintiff Kirk for the position of LT for which she sought promotion.

49.     Plaintiff Kirk would show that there was not a female on the selection panel and Committee member Captain Parker worked in the ***same zone or region*** as Cunningham; and Parker ***supervised*** Cunningham. Plaintiff Kirk did not have anyone on the committee that was from her region (***Northern Region***) and her supervisor, John Hillhouse, was not one of the committee members.

50.     Plaintiff Kirk would further show that selection committee member LT James Kelly was also ***supervised*** by Captain Parker at the time of the interview. Defendant Berry was in charge of the promotional interviews and he made the selection of the committee members; and he participated in the approval of the questions to be asked the candidate to be interviewed by the committee. Defendant Berry was the final decision maker as to the selection of the candidate to for the LT position that Plaintiff Kirk made application and for which she was seeking an Agency promotion.

51.     Plaintiff Kirk would show that Candidate Cunningham was the ***only*** candidate recommended by the selection committee to Colonel Donnell Berry. The committee and Captain Parker did not recommend Plaintiff Kirk as it was claimed that she "did not answer the questions completely" during the interview of the candidates. That a copy of Plaintiff Kirk's negative recommendation by Captain Prentiss Parker and submitted to Defendant Berry is attached hereto and marked Exhibit "B" and incorporated herein by reference.

13

52.     On **July 17, 2013**, the selection committee recommended to Defendant Donnell Berry the selection of Anthony Cunningham, a male, younger than Plaintiff Kirk; and Berry followed the recommendation and promoted Cunningham to the position of LT for which Plaintiff Kirk sought promotion. The promotional salary along with rank of LT was awarded to Cunningham and he was ***ordered to report*** to committee member Captain Prentiss Parker. A copy of the selection letter to Mr. Cunningham is attached hereto marked Exhibit "C" and incorporated herein by reference.

53.     Plaintiff Kirk would show that Cunningham and Captain Parker were friends and associates; and Parker was the supervisor of Cunningham. Plaintiff Kirk would show that Captain Parker called and told Cunningham that he had been selected on the night of the interview of candidates; and ***Cunningham called and informed Plaintiff Kirk that he had been selected for the position.***

54.     Plaintiff Kirk would show that Defendant Berry was aware that Parker supervised both Cunningham and fellow committee member, James Kelly, at the time of their selection as members of the interview committee for the LT position. However, Plaintiff Kirk was ***unaware*** of the members of the committee prior to the interviews on July 17, 2013.

55.     Plaintiff Kirk would show that the selection procedures of the Agency for the LT position that Plaintiff Kirk made application was not by objective methods and the selection of Anthony Cunningham was not based upon the identifiable job tasks and related knowledge, skills, and abilities of the candidates. The using of an all-male selection committee in which one committee member was the supervisor of a candidate; and the other member selected was being supervised by a committee member subjected the committee to subjective decision-making and

the improper selection of Cunningham for the LT position; and the selection process was contrary to the General Orders of the Agency and the Mississippi State Personnel Board.

56.     Plaintiff Kirk would show that Anthony Cunningham ("**Cunningham**") had been a Master Sergeant for three (3) years at the time of his application for the vacant position. He lives in Philadelphia, Ms. Cunningham has a college degree in business and Kirk had a degree in criminal justice. From May 2009 to April 2012, Cunningham ***did not*** supervise any employees. Cunningham reported to Captain Parker before he was a Master Sergeant, and in April 2010, Cunningham was promoted to DPS – Master Sergeant Driver Services, Troop H; and Cunningham reported to Captain Parker as a ***Master Sergeant.*** Cunningham was younger than Plaintiff Kirk.

57.     Plaintiff Kirk would show that with her non-selection for the vacant LT position, she realized that there was gender bias in the promotional process; and that she should take the necessary action to address the promotional process and for the deprivation of her civil rights based upon her membership in a protected class – *female* – in violation of the Equal Protection Clause and existing federal law. Plaintiff Kirk realized that she must seek relief outside the Agency.

58.     Plaintiff Kirk, believing that she was subjected to discrimination filed a ***Charge of Discrimination*** with the U.S. Equal Employment Opportunity Commission (sometimes referred to as the "EEOC") on or about August 28, 2013  claimed, in her charge of discrimination before the EEOC, that she was subjected to unlawful discrimination in violation of Title VII and the ADEA; that she was subjected to disparate treatment; that the selection process had a disparate impact on females and that the Defendant MDPS's discriminatory employment practices were in violation of Title VII of the Civil Rights Act of 1964, as amended.

59.     Plaintiff Kirk was clearly the ***better qualified candidate*** for the LT position that the Defendant MDPS sought applicants for the vacant position; and she had more experience that the other candidates and in particular, the candidate selected for the vacant position of LT by the Defendants MDPS, et al.  Defendant MDPS failed to consider her entire record (and accomplishments within Driver Services) in making the selection to fill the vacant LT position for which she made application.

60.     Plaintiff Kirk would show that Anthony Cunningham did not have the qualifications, credentials or experience in Driver Services as Plaintiff Kirk; that Plaintiff Kirk was placed in the LT position longer than any other candidates while the LT position was vacant; and that Plaintiff Kirk was the best qualified candidate for the LT position.  That Cunningham was the best qualified candidate for the vacant position, is simply not true. Plaintiff Kirk had served as a Master Sargent ("M/S") for 12 years with the Agency and she served as an ***Examiner*** in the Driver's Services division for 10 years.

61.     Plaintiff Kirk would show that M/S Cunningham had 3-4 years of experience as M/S and ***less than one (1) year*** in Driver Services as an ***Examiner***.  Captain Parker ***knew*** the experience of Plaintiff Kirk and her qualifications for the LT position.  However, Parker and the other selection committee members solely based the selection of the successful candidate on the testing during the interview of the candidates.  Plaintiff Kirk would show that the selection committee recommended the promotion to LT, ***Anthony Cunningham*** to Defendant Berry; and Cunningham was so appointed by Defendant Berry.

62.     Plaintiff Kirk's promotion would have resulted in increased duties and responsibilities; and career advancement within the MDPS.  Plaintiff Kirk has made application on at least ***eight (8) occasions*** for a promotion since becoming a Master Sergeant in 2002 and

she has been denied a promotion on ***all other occasions***.  The Defendant MDPS and its officials were well aware of Plaintiff Kirk's desire for advancement with the Agency.  Plaintiff Kirk contends that female employees with the Defendant MDPS are treated differently and denied equal opportunity to be promoted from within the Defendant MDPS.  The scoring system and method of promotion by the MDPS has had a disparate impact of neutral factors that has yielded a statistical disparity in the promotion practices of the MDPS – a lack of advancement of females within the Agency such as Plaintiff Kirk.

63.     Plaintiff Kirk would show that male employees of the Defendant MDPS are treated preferentially and selected by management that has allowed male employees that are less qualified, as in the case of Plaintiff Kirk, to be promoted while ***female employees*** have been treated differently.

64.     Plaintiff Kirk would show that ***females*** in the MPSD have been denied the equal opportunity to be promoted to the ***most desired positions*** with the Defendant MDPS; and that as a result, the defendants named herein have intentionally discriminated against Plaintiff Kirk on the basis of her membership in a protected class – ***female***; and that similarly situated individuals were intentionally treated differently ***without*** a rational relationship to a legitimate state purpose. See: *Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-602 (2008); Personnel Administrator of Mass.* v. *Feeney*, 442 U.S. 256, 273, 60 L. Ed. 2d 870, 99 S. Ct. 2282 (1979). See also *Mississippi Univ. for Women* v. *Hogan*, 458 U.S. 718, 724, 73 L. Ed. 2d 1090, 102 S. Ct. 3331 (1982); *Kirchberg* v. *Feenstra*, 450 U.S. 455, 461, 67 L. Ed. 2d 428, 101 S. Ct. 1195 (1981).

65.     The Defendant MDPS has discriminatorily applied its promotional procedures to fill the position for which Plaintiff Kirk sought promotion (LT) in the MDPS based upon her sex

(female).  Plaintiff Kirk would further show that the promotional process and promotional practices of the MDPS at all material times alleged herein has had a ***disparate impact*** on females seeking advancement in the MPSD.

66.     Plaintiff Kirk would show that the weight and significance in the qualifications for those that applied for the vacant position, as compared to Plaintiff Kirk, were such that no reasonable person could have selected Anthony Cunningham ("***Cunningham***") over Plaintiff Kirk for the position of LT; and that but for the flawed and unlawful selection/promotional process of the Agency for the position of LT, Plaintiff Kirk would have been selected as the most qualified candidate to fill the LT position in Driver Services.

67.     Plaintiff Kirk contends that the selection process of the Defendant MDPS in the case, *sub judice*, was and is subjective, prejudicial to females; lacked objective criteria in the selection process; failed to comply with the General Orders of the MDPS regarding promotional practices; that the subjective promotional practices and "testing of candidates" as in the case, *sub judice*, was discriminatory abuse towards females. *Bazile v. City of Houston, 858 F. Supp. 2d 718 (S.D. Tex. Feb. 6, 2012).*

68.     Plaintiff Kirk would show that the LT promotional testing did not test the entire "***job domain***" and the discriminatory testing for the LT position are impermissible; and the subjective reasoning for not selecting a candidate, such as solely based upon an "interview" and "scoring during that interview" by the three (3) members of the selection committee does not constitute a legitimate, non-discriminatory reason for Plaintiff Kirk's non-selection. *Alvarado v. Texas Rangers, 492 F. 3d 605 (5th Cir. 2007).*

69.     Plaintiff Kirk would show that the selection of Anthony Cunningham for the LT position that Plaintiff Kirk made application in 2013 was in violation of Title VII of the Civil

Rights Act of 1964, as amended; the ADEA and the Equal Protection Clause. *Garrett v. Hewlett-Packard Co., 305 F. 3d 1210 (10th Cir. 2002).*

70.     Plaintiff Kirk would show that the method of "scoring the candidates" for the LT position is at least consistent with discriminatory intent as Kirk received the low interview scores on account of her sex. In the present case, the all-male panel compared their scores (in an effort to be consistent as told by Parker) and scores were changed; and the promotion was based ***solely on the test results*** according to Parker and Gerrard. See: *Alvarado v. Texas Rangers, 492 F.3d 605, 617, 2007 U.S. App. LEXIS 16928, 90 Empl. Prac. Dec. (CCH) P42950, 100 Fair Empl. Prac. Cas. (BNA) 1793 (5th Cir. Tex. 2007).*

71.     Plaintiff Kirk would show that at the time of her interview, she was serving as "Acting LT" for the vacant position. Plaintiff Kirk was informed that she was not selected for the LT position for which she made application by the successful candidate, Anthony Cunningham. Cunningham also told Plaintiff Kirk that ***she*** did not need to continue performing the acting LT duties as he was "handling those duties" from now on.

72.     Plaintiff Kirk would show the Court that Captain Parker told M/S Cunningham of his promotion to the LT position shortly after the interview of the candidates – that same day. Cunningham then informed Plaintiff Kirk of the news.

73.     Plaintiff Kirk would show that she did not receive a copy of any General Order or letter from the MDPS that Mr. Cunningham was promoted to the vacant position. As a matter of practice and policy, General Orders are issued to all personnel after the selection of a candidate for promotion. Not only did the MDPS failed to comply with its General Orders regarding promotions, the MDPS also failed to notify Plaintiff Kirk of the promotion of Cunningham.

74.     Plaintiff Kirk would show that Captain Prentiss Parker was also at all times "pulling the strings" as to the promotion of Cunningham as espoused in *Staub v. Proctor Hospital, 131 S. Ct. 1186, 179 L. Ed. 2d 144, 2011 U.S. LEXIS 1900 (2011)*.  Parker was a "*cat's paw*" in the selection process, as this is a term that derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by Posner in 1990. See *Shager v. Upjohn Co., 913 F.2d 398, 405, 1990 U.S. App. LEXIS 16361, 54 Empl. Prac. Dec. (CCH) P40229, 53 Fair Empl. Prac. Cas. (BNA) 1522 (7th Cir. Wis.1990)*.  In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing. A coda to the fable (relevant to employment law) observes that the cat is similar to princes who, flattered by the king, perform services on the king's behalf and receive no reward.

75.     In the case, *sub judice*, Captain Prentiss Parker was so ***inextricably intertwined*** in the selection process; and that as a result of his gender and sex bias, his friend and associate Anthony Cunningham was selected for the vacant position.  There has not been an occasion when the recommendation of a committee chaired by Major Chris Gillard, Director of Driver Services Bureau of the MDPS has been rejected by Defendant Donnell Berry; and that Gillard, by destroying the interview notes, and Parker, by having scored the test results as he did, tainted and invalidated the selection of Anthony Cunningham, a male, as espoused in *Staub, supra*; intentionally subjected Plaintiff Kirk to disparate treatment; and subjected Plaintiff Kirk to a violation of her constitutionally protected rights be persons acting under color of law.

76.     Plaintiff Kirk would show that she was and is the "clearly better qualified" candidate and that this standard "should be understood to mean that disparities in qualifications

20

must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Bright v. GB Bioscience Inc., 305 F. App'x 197, 205 n.8 (5th Cir. 2008)(quoting Deines, 164 F.3d at 280-81); and Churchill v. Tex. Dep't of Crim. Justice, 539 Fed. Appx. 315 (5th Cir. 2013).*

77.     Plaintiff Kirk would further show that Captain Parker in 2014 ***retired*** from the Agency. The position is now vacant. ***Lt James Kelly***, the same committee member that served on the selection committee for the LT position for which Plaintiff Kirk was not selected, is now serving as ***Interim Captain*** in the position vacated by Captain Parker.  Another Captain slot has also been created in 2014 by the Defendants MDPS, et al and that position has been filled on an interim basis by ***Lt Kenneth Brown*** (***Interim Captain***).  Neither of these positions has been posted by the MDPS since the filing of Plaintiff Kirk's charge of discrimination with the EEOC in this action.

78.     Plaintiff Kirk was and is qualified for either of these vacant ***Captain slots*** with the Agency and that she is ready, willing and able to fill either of these positions.  Plaintiff Kirk would seek judicial intervention to fill either of those positions in the event that she prevails in this action; and that this Court utilize the injunctive authority to compel her promotion to the position of ***Captain*** as appropriate relief against the Agency – MDPS – and the Defendants Santa Cruz and Berry for the enforcement of the Federal Constitution's Fourteenth Amendment.

79.     Plaintiff Kirk also claimed that she had been discriminated against on the basis of her age as younger employees have been treated more fairly and different from her; and that younger employees have been not been subjected to the same terms and conditions of employment as her in violation of the ADEA.

80.     Plaintiff Kirk would show that other employees not of the sex and gender of Plaintiff Kirk (female) have been ***similarly situated*** and they have been treated more favorably than her. Plaintiff Kirk was previously denied a promotion to the position of Lieutenant and Captain in March 2013 and again after the retirement of LT Wright in June 2013.

81.     Plaintiff Kirk would show that she was denied promotion by the Agency on the basis of sex, female; and that the Defendant MDPS has engaged in a "pattern and practice" of sexual and gender discrimination of females and preferential treatment to male employees in the area of promotion in violation of federal law. *Harvill v. Westward Communications, LLC, 433 F. 3d 428 (5ᵗʰ Cir. 2005).*

82.     Plaintiff Kirk would show that the Defendants MDPS, et al chose a candidate to fill the LT position, Anthony Cunningham, based upon unlawful criteria. *Tex. Dept. Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981).*

83.     Plaintiff Kirk seeks from this Court any and all relief available to her under Title VII, including back pay; and any other damage to which I have entitled under Title VII and the ADEA including attorney's fees and costs incurred; and Plaintiff Kirk is ***injunctive relief*** to be free from ***any and all retaliation and/or reprisal***; and she is seeking the promotion to the position of **DPS – REGION SUPV DRIVER SERV (LT)** that was posted on June 7, 2013 and for which she was the most qualified candidate.

84.     Plaintiff Kirk wants to obtain, in the alternative, based upon the violation of the Equal Protection Clause by the Defendants MDPS, et al a promotion to the position of ***Captain*** with the Agency with back pay and any other appropriate relief to which Plaintiff Kirk may be entitled in the premises.

85.    Plaintiff Kirk also seeks an *injunction* against her employer **MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY ("MDPS")** and that the named officials of the MDPS be mandated to comply with the applicable federal law so that other females are not the subject of disparate treatment or disparate impact as a result of the hiring and promotional policies of the Defendant MDPS; and that promotions are not based upon unlawful criteria.

86.    Plaintiff Kirk filed her charge of discrimination with the EEOC and after obtaining a "***Right to Sue***" has complied with all the judicial prerequisites for the bringing of this action before this Court.    That a copy of the EEOC Notice of Suit Rights and Charge filed with the EEOC is attached hereto marked Exhibit "D" and incorporated herein by reference.

## COUNT I

87.    Plaintiff Kirk re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

88.    Plaintiff Kirk would show that the Defendant MDPS's reason for promoting Cunningham is not true, but instead is a pretext for discrimination ("pretext alternative").  In the alternative, Plaintiff Kirk would show that the reason could be true, but it is only one of the reasons for conduct of the Defendant MDPS,  and another ***motivating factor*** is Plaintiff Kirk's protected characteristic – female or gender ("mixed motive alternative") as espoused in *Rachid v. Jack in the Box, 376 F. 3d 305, 312 (5th Cir. 2004).*

89.    Plaintiff Kirk was unlawfully discriminated against based of her sex and gender (female) and in violation of federal law that prevents discrimination on the account of sex and

gender; and Plaintiff Kirk seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct that were in violation of Title VII.

## COUNT II

90.     Plaintiff Kirk re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

91.     Plaintiff Kirk was unlawfully discriminated against based of her age in violation of federal law/ ADEA that prevents discrimination on the account of age for workers over the age of 40.

92.     Plaintiff Kirk would show that at the time of her application for the vacant LT position that she was the only female and in the protected category of the ADEA.  Plaintiff Kirk was and is a member of the protected class under the ADREA – 40 and older; that she was qualified for the position for which she sought promotion; that she was not selected by the Agency; and that the position was filled by someone younger than her.

93.     Plaintiff Kirk seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct that were in violation of the ADEA including liquidated damages.

## COUNT III

94.     Plaintiff Kirk re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

95.     Plaintiff Kirk was unlawfully discriminated against on the basis of her sex and gender (female) in violation of the provisions of Title VII; and that the actions of the MDPS had

24

a "*disparate impact*" or "*adverse impact*" on those protected employees such as Plaintiff Kirk under Title VII. Under Title VII, Plaintiff Kirk claims that she was *__adversely affected__* by the "promotional practices of the MDPS" because her sex and gender (female); and that there was no rational basis for such treatment.

96.     Plaintiff Kirk would show that Title VII's disparate impact charge against the Defendant MDPS, et al prohibits *neutral* employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group. Unlike disparate treatment, the disparate impact theory does not require proof of the defendant's subjective gender or sexual animus or intent to discriminate. The theory of disparate impact, as in the case, *sub judice*, is a doctrinal surrogate for eliminating unprovable acts of intentional discrimination hidden innocuously behind facially-neutral policies or practices such as are being practiced by the MDPS in the promotional process.

97.     Plaintiff Kirk would show that to establish a prima facie case of racial discrimination under the disparate impact theory the Plaintiff must show that a "facially neutral employment practice had a significantly discriminatory impact." Once a prima facie case of disparate impact is presented, both the burden of production and persuasion shift to the Defendant MDPS, to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity. If the Defendant MDPS is successful on this score, the Plaintiffs may still prevail by proving that an alternative, non-discriminatory practice would have served the defendant's stated objective equally as well.

98.     Plaintiff Kirk would show that the promotional process of the MDPS has a disparate impact on females applying for promotion within the MDPS; and that as a result

thereof, Plaintiff Kirk seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct that were in violation of Title VII.

## COUNT IV

99.     Plaintiff Kirk re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

100.    Plaintiff Kirk would show that the Defendant MPSD in the promotional process claimed herein, violated the Equal Protection Clause in that all persons similarly situated should be treated alike. Plaintiff Kirk, a female, claims that she is a member of a protected class, a female; and that based upon her gender she received *different treatment* that received by other similarly situated individuals that are male. The Defendant MDPS has a pattern and practice of denying promotion to females and as a result, females have had to seek judicial review for promotions within the Agency.

101.    Plaintiff Kirk would show that the destruction of the notes of committee members that interviewed the candidates support her claim of gender bias. In *Talavera v. Shah, 638 F. 3d 303, 2011 U.S. App. LEXIS 6299 (D.C. Cir. 2011)*, the Court of Appeals held that in a gender discrimination promotion case that the manager's ***destruction of his interview notes*** supported an inference that the notes would have contained information favorable to the employee's claim. See also: *Gerlich v. United States DOJ, 711 F. 3d 161, 2013 U.S. App. LEXIS 6285 (D.C. Cir. 2013)*.

102.    Plaintiff Kirk would show that she has alleged an one equal protection claim against the Defendant MDPS as a result of her failing to be promoted to the position of LT in 2013; and for having been passed upon for other promotions because of her gender (female); and

that the Defendant MPSD intentionally treated females different in the promotional process; and there is no rational basis for the difference in treatment. *Village v. Willowbrook v. Olech, 582 U.S. 562 (2000; and Perano v. Twp. Of Tilden, 423 Fed. Appx. 234, 238 (3d Cir. 2011).*

103.     Plaintiff Kirk would show that the purpose of the equal protection clause is to secure every person within the State's jurisdiction against *intentional and arbitrary discrimination*, whether occasioned by express terms of a statute or *by its improper execution through duly constituted agents*.  Furthermore, as a Veteran, Plaintiff Kirk was to be provided additional points in the promotional process of the Defendant MDPS, and the Agency failed to provide those additional points to Plaintiff Kirk.

104.     Plaintiff Kirk claims that she was denied equal protection by the Defendant MDPS, Santa Cruz, and Berry as a result of the selection of Cunningham as LT, the position that she made application and was the most qualified candidate.  Historically, females have been excluded in the promotion process by the Agency for upper management positions; and Plaintiff Kirk's failure to be selected for qualified positions support that patter of sexual and gender discrimination; and that Defendants Santa Cruz and Berry knew that the promotional process used by the MDPS deprived Plaintiff Kirk of rights secured under the Equal Protection Clause of the U. S. Constitution. *Flagg Bros., Inc. v. Brooks, 436 U.S. 249 (1978).*

105.     Plaintiff Kirk would show that while the prejudicial attitudes toward women in this country have not been identical to those held toward racial minorities, the similarities between the experiences of racial minorities and women, in some contexts, "overpower those differences." *Note, Beyond Batson: Eliminating Gender-Based Peremptory Challenges, 105 Harv. L. Rev. 1920, 1921 (1992).*

106.    Plaintiff Kirk would show that as a plurality of the Supreme Court observed in *Frontiero* v. *Richardson*, 411 U.S. at 685: "Throughout much of the 19th century the position of women in our society was, in many respects, comparable to that of blacks under the pre-Civil War slave codes. Neither slaves nor women could hold office, serve on juries, or bring suit in their own names, and married women traditionally were denied the legal capacity to hold or convey property or to serve as legal guardians of their own children. . . . And although blacks were guaranteed the right to vote in 1870, women were denied even that right -- which is itself 'preservative of other basic civil and political rights' -- until adoption of the Nineteenth Amendment half a century later." (Footnote omitted.). See: *J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89, 1994 U.S. LEXIS 3121, 62 U.S.L.W. 4219, U.S., 1994).*

107.    Plaintiff Kirk would show that women have suffered more at the hands of discriminatory state actors during the decades of our Nation's history.  It is necessary only to acknowledge that "our Nation has had a long and unfortunate history of sex discrimination," *id.*, at 684, a history which warrants the heightened scrutiny we afford all gender-based classifications today". *J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127 supra.*

108.    Plaintiff Kirk would show that under our equal protection jurisprudence, gender-based classifications require "an exceedingly persuasive justification" in order to survive constitutional scrutiny. See *Personnel Administrator of Mass.* v. *Feeney*, 442 U.S. 256, 273, 60 L. Ed. 2d 870, 99 S. Ct. 2282 (1979). See also *Mississippi Univ. for Women* v. *Hogan*, 458 U.S. 718, 724, 73 L. Ed. 2d 1090, 102 S. Ct. 3331 (1982); *Kirchberg* v. *Feenstra*, 450 U.S. 455, 461, 67 L. Ed. 2d 428, 101 S. Ct. 1195 (1981).

109.    Plaintiff Kirk would show that in *Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)*, the United States Supreme Court has recognized

successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See *Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 67 L. Ed. 340, 43 S. Ct. 190 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 102 L. Ed. 2d 688, 109 S. Ct. 633 (1989)*.

110.    Plaintiff Kirk would show that in *Olech, supra*, the Supreme Court explained that "'the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co., supra*, at 445 (quoting *Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 U.S. 350, 352, 62 L. Ed. 1154, 38 S. Ct. 495 (1918))

111.    Plaintiff Kirk would show that to treat employees differently in the government context, such as in the promotion process is a challenge to the underlying nature of government action that all employees should be treated the same. *Engquist v. Or. Dep't of Agric., 553 U.S. 591 (2008)*.

112.    Plaintiff Kirk would show that the Defendant MDPS is an agency of the State of Mississippi and subject to the laws that protect against discrimination and violation of the Equal Protection Clause.  The Defendant MDPS is not immune from its own acts and conduct that result in the violation of constitutional rights of one of its employees such as Plaintiff Kirk.

113.    Plaintiff Kirk would show that ***Section 1 of the Fourteenth Amendment*** provides, in relevant detail that "No State shall...deprive any person of life, liberty, or property without due process of law; ***nor deny to any person within its jurisdiction the equal protection of the laws.***

114.    Plaintiff Kirk would show that the ***Fourteenth Amendment*** to the Constitution

makes the First Amendment applicable to the States. *McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 336 n. 1, 115 S. Ct. 1511, 131 L. Ed. 2d 246 (1995); and see also: Johnson v. Poway Unified Sch. Dist. 658 F. 3d 954, 2011 U.S. App. LEXIS 18882, (9ᵗʰ Cir. Cal. 2011).*

115.    As a result of the acts and conduct described herein by the Defendant MDPS, et al Plaintiff Kirk seeks any and all relief to which she is entitled to for the denial of equal protection of the laws, including injunctive relief and appropriate relief to include money damages against the Defendants MDPS, et al. *Sassamon v. Texas, 131 S. Ct. 1651, 2001 U.S. LEXIS 3187.* (2011).

## COUNT V

116.    Plaintiff Kirk re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

117.    Plaintiff Kirk would show that the State of Mississippi and its Agency, the Defendant MDPS, has authorized such a suit as in the case, *sub judice*, in the exercise of the Fourteenth Amendment; and the she seeks that relief for the violation of her rights to equal protection under the Fourteenth Amendment to the United States Constitution and pursuant to *42 U.S.C. §1983.*

118.    Plaintiff Kirk would show that the actions of the Defendant MDPS and its designees named herein; and under the color of law under *42 U.S.C. §1983* have violated the Fourteenth Amendment to the United States Constitution; and these acts and conduct by the MDPS have been violations of the Equal Protection Clause for which she seeks all appropriate relief under law.

119.    Plaintiff Kirk would seek judicial intervention and request that this Court utilize the injunctive authority to compel her promotion to the position of *Captain* as appropriate relief against the Agency – Defendant MDPS – and the Defendants Santa Cruz and Berry; and to provide such other and further relief, injunctive or otherwise to ensure the enforcement of the Federal Constitution's Fourteenth Amendment as to the Defendant MDPS and its designees.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** based on the foregoing allegations, Plaintiff Kirk requests the Court to assume jurisdiction over this cause, and upon a hearing of the merits in this cause, grant the following relief:

a.    Order that Defendants MDPS, Santa Cruz and Berry to promote Plaintiff Kirk to the position of LT and/or Captain, free from all reprisals, with full back pay and benefits or, in the alternative, and award Plaintiff back pay as allowed by law and all other damages to which he is entitled under Title VII and the ADEA; and the Fourteenth Amendment;

b.    Award Plaintiff Kirk a judgment against Defendants MDPS, et al in the amount of $200,000.00 for her actual and compensatory damages to which she is entitled for injury, damage, and loss suffered as a result of Defendants' violation of 42 U.S.C. §§ 2000e; Title VII, ADEA;  and the Equal Protection Clause of the *Fourteenth Amendment to the U.S. Constitution, Section 1*; and *42 U.S.C. §1983;*

c.    Award Plaintiff Kirk all costs and attorney's fees pursuant to the relevant provisions of 42 U.S.C. §§ 2000e; and 42 U.S.C. Section 1988;

d.    Grant a permanent injunction enjoining Defendant MDPS, its agents, employees, successors, assigns, and all persons in active concert or participation with them, from engaging in sexual discrimination in violation of 42 U.S.C. §§ 2000e and Title VII; or the ADEA;

31

e    Grant a permanent injunction enjoining the Defendant MDPS its agents, employees, successors, assigns, and all persons in active concert or participation with them from intentionally engaging in unlawful employment practices; and engaging in subjective practices as in the case, *sub judice*, have a disparate impact on female applicants and employees of the Defendant MDPS; and that violate equal protection of the laws. *NAACP v. Fla. Dep't of Corr., supra; Village v. Willowbrook v. Olech, 582 U.S. 562 (2000, supra.*

f.    Award Plaintiff Kirk all such other and further relief as may be necessary and proper and to which he is otherwise entitled pursuant to the provisions of 42 U.S.C. §§ 2000e and pursuant to Title VII and the ADEA.

g.    Furthermore, Plaintiff Kirk also seeks any and all other appropriate relief as she may be entitled under the claims brought herein in this her Complaint filed in this action.

**RESPECTFULLY SUBMITTED**, this the 10th day of July, 2014.

OLA KIRK, PLAINTIFF

BY:    JOHN M. MOONEY, JR.,
       HER ATTORNEY


JOHN M. MOONEY, JR.
LAW OFFICES OF JOHN M. MOONEY, JR., PLLC
208 Waterford Square, Suite 100
Madison, Mississippi 39110
Telephone: (601) 981-9555
Facsimile: (601) 981-7922
MBIN:    3431

ATTORNEY FOR PLAINTIFF, OLA KIRK

## REQUEST FOR TRIAL BY JURY

**COMES NOW** the Plaintiff, **OLA KIRK,** by and through counsel, and respectfully requests this Court to grant her a trial by jury of her peers.

**RESPECTFULLY SUBMITTED**, this the 10th day of July, 2014.

_____
JOHN M. MOONEY, JR.